# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
         **Plaintiff,**

    **v.**                              **Case No. 25-CR-1**

**OMAR J. BURKS**
         **Defendant.**

## DECISION AND ORDER

      The government charged defendant Omar Burks with carjacking on March 24, 2024, 18 U.S.C. § 2119(1) (count one); felon in possession of firearms on April 5, 2024, 18 U.S.C. § 922(g)(1) (count two); possession with intent to distribute controlled substances on April 5, 2024, 21 U.S.C. § 841(a)(1) (count three); and possession of a firearm in furtherance of the drug trafficking offense charged in count three, also on April 5, 2024, 18 U.S.C. § 924(c) (count four). Defendant filed motions to suppress evidence seized from his person and vehicle following his warrantless arrest and pursuant to subsequently issued search warrants, to dismiss count two, and to sever count one from counts two through four. The magistrate judge handling pre-trial proceedings recommended that the motions to suppress and dismiss be denied, and denied the motion to sever.

      Defendant objects. I review de novo the recommendations on the motions to suppress and dismiss, Fed. R. Crim. P. 59(b), but will set aside the order on the motion to sever only if it is contrary to law or clearly erroneous, Fed. R. Crim. P. 59(a). For the reasons that follow, I adopt the recommendations and deny the motions to suppress and dismiss.

# I. BACKGROUND

## A. Facts

The magistrate judge's report sets forth the facts, which are for present purposes undisputed.[1] (R. 45 at 2-14.) I present an abbreviated version herein.

During the early morning hours of March 24, 2024, S.T. was the victim of a carjacking. Surveillance video shows S.T. driving his Mazda north on 23rd Street and stopping at the intersection of Wisconsin Avenue, where he remained motionless for over three minutes. A large dark blue SUV pulled alongside the Mazda, an unknown individual exited the driver's side of the SUV and entered the passenger side of the Mazda, and the SUV drove away. The Mazda then proceeded across Wisconsin Avenue and stopped, the unknown individual exited the passenger side and walked around to the driver's side, and S.T exited the vehicle. The unknown individual then drove away in the Mazda.

Responding police had difficulty communicating with S.T. because he was upset and crying, unable to speak English, and intoxicated. With the assistance of a Spanish speaking officer acting as interpreter, S.T. reported that "a black male about 40-50 years old, 6'0-6'2, muscular build, short black hair, gap in his teeth, black/brown beard," approached on foot, pulled a pistol, and forced him out of his Mazda. (R. 40 at 3 ¶ 10.) On March 28, during a follow-up interview, S.T. described the robber as a "black male" who was "big"/"built" and "looked like he goes to the gym." (R. 40 at 7 ¶ 25.) He further indicated that the robber used

---

[1]Before the magistrate judge, the parties filed stipulated and disputed facts. (R. 40.) The disputed facts concerned whether defendant's girlfriend consented to the entry and search of their home, pursuant to which officers found another firearm by defendant's bed. (R. 40 at 22.) However, the government has agreed not to introduce evidence from this search, mooting the issue. (R. 45 at 13.)

a revolver.

On April 1, 2024, police spotted the stolen Mazda and attempted a stop, but the vehicle sped off, leading the officers on a high speed chase, which ended when the police deployed "stop sticks." Immediately after the stop, the driver, A.H., said he purchased the vehicle from a "hype" for $40. He also expressed a desire to cooperate with police to gain his freedom. Later that day, police conducted a photo array targeting A.H., but S.T. made no identification.

During a custodial interview on April 2, 2024, A.H. initially said he got the car from an unknown person but later identified defendant as the person who sold it to him. A.H. further stated that defendant told him he stole the Mazda from a sleeping person near The Rave (2401 West Wisconsin) about a week before. A.H. described defendant as a black male with a muscular build, dreads past his shoulders, a mustache, and in his late thirties. A.H. also described defendant's Facebook page, identified the blue SUV in the surveillance footage as defendant's Tahoe, provided defendant's phone number, and stated where defendant lived. The interviewing officer stopped the interview and confirmed that defendant lived in the area A.H. indicated and owned a blue Chevy Tahoe SUV. During a follow-up interview, A.H. identified photos of defendant and his house. A.H. also stated that defendant sold drugs, carried a gun on his person or in his SUV, and had a secret compartment in the center console of his Tahoe where he hid his drugs and guns.

On April 5, 2024, police observed defendant arrive at his house in the blue Tahoe. A few minutes later, after he exited his house and reentered the SUV, police arrested him. They seized from his person two cell phones and an Apple watch. Defendant is 6'5" tall, 34 years old, with shoulder length dreadlocks and no notable gap in his teeth. However, his Tahoe appears to be same vehicle used in the carjacking. (R. 40 at 16-17, comparison photos.)

3

Police searched the Tahoe, locating a revolver under the driver's seat. They also discovered a storage space underneath the center console cup-holder, which contained a scale and controlled substances.

Police subsequently obtained search warrants for defendant's phones and phone records. The extraction from defendant's iPhone included biometric data from the Apple watch, which showed movement around the time of the carjacking. The cell phone records further indicated that defendant's phone was in the area of the carjacking around the time of the incident.

## B. Magistrate Judge's Report and Recommendation

### 1. Motions to Suppress

#### a. Defendant's Arrest and Search of the Tahoe

Defendant argued that the police lacked probable cause to arrest him, stressing A.H.'s unreliability and the mismatch between his appearance and S.T.'s initial description of the robber. The magistrate judge rejected the argument, stressing the match between defendant's Chevy Tahoe and the SUV involved in the carjacking. The magistrate judge also concluded that A.H.'s credibility issues did not negate probable cause because the officers corroborated much of what A.H. told them about defendant. Finally, the magistrate judge found that the mismatch between defendant's appearance and S.T.'s initial description of the robber also did not negate probable cause, as the carjacking involved at least two people: the person who entered the Mazda and the person who drove off in the SUV. Because the police had probable cause to arrest, their search of defendant incident thereto was also proper. (R. 45 at 14-21.)

Defendant also challenged the search of the Tahoe following his arrest. The magistrate

4

judge found that the officers had probable cause to believe the Tahoe would contain evidence of the carjacking. In particular, the police had grounds to search the SUV for the gun used in the carjacking, the Tahoe's title and other identifiers for defendant, and S.T.'s stolen property. (R. 45 at 21-23.)

### b. Search Warrants

Defendant argued that the search warrant affidavits failed to establish probable cause, the warrants were overbroad, the officers' search exceeded the scope of the warrants, and the officer-affiant intentionally or recklessly omitted material information from the affidavit that would have defeated probable cause. The magistrate judge rejected these arguments.

First, the magistrate judge noted that, in addition to the facts supporting defendant's arrest, the police found drugs and a gun during the search of the Tahoe, providing further support for the notion that evidence of criminal activity would be found on defendant's phones. The magistrate judge similarly noted that the officers had probable cause to believe the phone records would contain evidence of the carjacking, such as location information at the time of the crime. (R. 45 at 23-26.)

Second, the magistrate judge found that the cell phone warrants satisfied the particularity requirement by cabining the search to the crimes under investigation. The warrant for the cell phone records covered a roughly two-month period, which was reasonable given the multiple crimes under investigation, including offenses (gun possession and drug trafficking) that were ongoing in nature. (R. 45 at 26-28.)

Third, the magistrate judge found that the officers did not exceed the scope of the warrant by viewing the iPhone health application data. The data appeared in plain view with the rest of the cell phone extraction and was thus covered by the warrant authorizing a search of

5

the phone. (R. 45 at 27.)

Finally, the magistrate judge declined defendant's request for a <u>Franks</u> hearing, finding the omissions regarding A.H.'s credibility immaterial given the officers' substantial corroboration of his information. The magistrate judge further concluded that, given the omission of other information that would have <u>bolstered</u> A.H.'s credibility, defendant could not make a showing that the affiant acted in disregard for the truth rather than for the purpose of brevity. The magistrate judge similarly rejected defendant's argument that the affiant improperly omitted S.T.'s initial description of the carjacker. In any event, even if the affiant improperly omitted this information, the magistrate judge noted that defendant's <u>Franks</u> arguments related only to probable cause to search based on the carjacking, ignoring that the warrants were also supported by probable cause to search for evidence of drug trafficking and firearm possession. (R. 45 at 28-31.)

### 2. Motion to Dismiss

Defendant moved to dismiss count two on Second Amendment grounds, arguing that 18 U.S.C. § 922(g)(1) is unconstitutional facially and as applied to him. The magistrate judge noted that every judge in this district has concluded that § 922(g)(1) is consistent with the history and tradition of the Second Amendment. The magistrate judge also rejected defendant's as-applied challenge, stressing defendant's substantial prior record and completion of supervision just five months before his arrest in this case. (R. 45 at 36-37.)

### 3. Motion to Sever

The magistrate judge found count one properly joined with counts two through four. One of the guns defendant was charged with possessing in count two was the same gun allegedly

6

used in the carjacking charged in count one, which was sufficient to join those two counts. And defendant made no claim that count two was not properly joined with counts three and four. The magistrate judge found it immaterial that count one was unrelated to counts three and four, and that such "chaining" of charges is permissible. (R. 45 at 32-34.)

The magistrate judge also rejected defendant's argument that a joint trial would prejudice his defense, noting the significant evidentiary overlap. He concluded that defendant failed to rebut the presumption that a jury will capably sort the evidence and follow limiting instructions to consider each count separately. (R. 45 at 34-35.)

## II. DISCUSSION

**A.     Motions to Suppress**

    **1.     Search of Defendant's Person and Vehicle**

        **a.     Defendant's Arrest**

A warrantless arrest is lawful if there is probable cause to believe a crime was committed. United States v. Haldorson, 941 F.3d 284, 290 (7th Cir. 2019). Police officers possess probable cause to arrest when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense. Id.  As the Seventh Circuit has emphasized, "there is a difference between evidence of the kind that negates proof beyond a reasonable doubt and that which is so significant as to undo the existence of probable cause." Purvis v. Oest, 614 F.3d 713, 723 (7th Cir. 2010). This is so because the evidence required to establish probable cause is considerably less than that required to sustain a criminal conviction; it is not proof beyond a reasonable doubt, or even proof by a preponderance of the evidence.

7

Id. (citing Braun v. Baldwin, 346 F.3d 761, 766 (7th Cir. 2003)). The court examines the totality of the circumstances in a common sense manner to determine whether probable cause exists in a given situation. Haldorson, 941 F.3d at 290.

The police had sufficient information to arrest defendant here. They knew that defendant owned and operated a blue Chevy Tahoe, which appeared to the same SUV involved in the carjacking. They learned from A.H., the man caught driving the stolen car, that defendant sold him the vehicle. A.H. provided details about the robbery—that defendant stole the vehicle from a sleeping person near The Rave (located on 24th and Wisconsin)—matching the information police had from the surveillance video. And A.H. provided other information about defendant (e.g., his Facebook page, phone number, and address) officers were able to corroborate.

In his objections, defendant stresses the variance between his appearance and the description provided by S.T. (R. 48 at 3-4.) I cannot accept defendant's claim that these discrepancies are such that they exclude him as the robber, particularly given S.T.'s intoxication at the time of his initial statement and his later statement describing the robber without mention of a gap in the teeth or dreadlocks. In any event, as the magistrate judge observed, the carjacking appeared to involve at least two people: the person who got into S.T.'s Mazda and the person who drove away in the SUV.

Defendant also argues that the police could not rely on A.H. given his shifting story as to how he got the SUV, his motivation to shift blame away from himself, his prior felony convictions, and his admissions to drug use and a previous brain injury. (R. 48 at 5-8.) But defendant overlooks the significant information A.H. was able to provide. He identified the blue SUV in the surveillance still as defendant's Tahoe. His description of how defendant said he got the Mazda matched the surveillance video officers already had. And he provided other

8

information suggesting knowledge of defendant's criminal activity (e.g., the secret compartment in the center console of defendant's Tahoe).[2]

Defendant contends there was nothing so distinctive about his Tahoe that conclusively showed it was the same vehicle captured on the surveillance footage. (R. 48 at 7.) However, the comparison photos included with the parties' stipulated facts strongly suggest the vehicles are the same. (R. 40 at 16-17.) Defendant further contends that merely owning a vehicle involved in a crime does not create probable cause that the owner participated in the crime. (R. 48 at 7.) In this case, however, the police had information from A.H. that defendant was involved in the carjacking.

Defendant argues that, aside from where he lived and the car he drove, the police corroborated very little of A.H.'s information. (R. 48 at 9.) But A.H. also relayed defendant's alleged admission of how he got the car, from a sleeping person near The Rave, which matched the surveillance video. A.H. also provided information about defendant's alleged drug

---

[2]During his April 2, 2024, interview with police, A.H. initially said he got the car from a tall black man, muscular build, with dreads, whom he did not really know. (Def.'s Ex. L at 11:00-13:34.) After the interrogating officer said the vehicle was taken in a robbery, A.H. asked if the police had videos. (Id. at 21:35-21:41, 23:23-23:30.) The officer showed A.H. a still photo of the SUV, and A.H. said it looked "real familiar." (Id. at 22:33.) He later said he knew whose car it was, but he was afraid to say who because he would be labeled a snitch. (Id. at 37:02-37:13.) A.H. also expressed fear of this person. (Id. at 38:29: "he's a killer, man. I don't wanna, I don't wanna tell fucking name up, man."; id. at 38:57: "'Cause he is a murderer, man."; see also R. 40 at 13 ¶ 56, "A.H. also mentioned fearing Burks and claimed Burks was connected to 'GDs' or 'Gangsta Disciples' out of Chicago.") After further discussion about whether the police could protect him, A.H. eventually named the man who gave him the car as Omar Burks. (Def.'s Ex. L at 51:02.) When asked to describe the man, A.H. said: "Black. Same dude, dreads, I described him, like right out the way." (Id. at 51:35.) Read as a whole, the transcript does not leave me with the impression that A.H. was attempting to shift blame for the carjacking away from himself, but rather that he was reluctant to identify defendant as the person from whom he got the car. His description of defendant's build also resembles the description S.T. gave in the follow up interview on March 28, 2024.

trafficking and use of a secret compartment in the Tahoe, suggesting a level of knowledge regarding defendant's unlawful activities. These were more than conclusory allegations.

Defendant contends that A.H.'s familiarity with the carjacking more likely stemmed from his personal involvement given that he was caught driving the stolen car. (R. 48 at 10.) But the police had no information A.H. was involved in the carjacking: S.T. failed to identify him in a photo array (R. 40 at 9 ¶ 40), and A.H.'s characteristics vary even more widely from S.T.'s description (Def.'s Ex. L. at 12:43, "I'm 5'6").

Defendant accuses the magistrate judge of hypothesizing scenarios as to how he could have been involved. (R. 48 at 10.) But the police had more than speculation here. While defendant notes discrepancies in S.T.'s description and reasons to question A.H.'s credibility, under the totality of the circumstances the police had reasonably trustworthy information that defendant was involved in the cajacking. Defendant notes that the police could have done more, e.g., have S.T view a photo array containing his picture, talk to defendant or anyone who knew him to find out where he was at the time of the robbery, obtain fingerprint or DNA results from the Mazda (R. 48 at 11), but once officers have performed a good-faith investigation and assembled sufficient information from the totality of the circumstances to establish probable cause, they are not required under the Constitution to continue searching for additional evidence. Mwangangi v. Nielsen, 48 F.4th 816, 831 (7th Cir. 2022).

Defendant nevertheless argues the police were required to do more to corroborate the statements from this previously unknown informant. (R. 48 at 12-13.) But as the Seventh Circuit has noted, there are no hard and fast rules on this context. Where probable cause is based on information supplied by an informant, the court employs a totality-of-the circumstances inquiry encompassing several factors including the detail and specificity of the information provided

10

by the informant, the interval between the date of the events and the police's use of the information, and the extent to which law enforcement corroborated the informant's statements. See United States v. Searcy, 664 F.3d 1119, 1122 (7th Cir. 2011). "No one factor is determinative and a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." Id. (internal quote marks omitted). Here, A.H. provided detailed information about how defendant got the car (he stole it from a sleeping person stopped near The Rave), as well as information about defendant's drug trafficking (including his use of a hidden compartment in the Tahoe to hide his drugs); the carjacking occurred on March 24, 2024, A.H. got the car from defendant the day before his arrest on April 1, 2024, and the police arrested defendant on April 5, 2024, three days after interviewing A.H.; and, as summarized above, the police corroborated A.H.'s information about defendant's vehicle, residence, and Facebook page.

In reply, defendant stresses that A.H. is the only one who placed defendant at the robbery scene (R. 55 at 1), but this overlooks the surveillance footage depicting a vehicle that appeared to be defendant's Tahoe pull up next to the Mazda.[3] Defendant further contends that A.H. provided only innocuous details (R. 55 at 2), but this overlooks his statement about the hidden compartment in the Tahoe where defendant hid his drugs. Defendant also repeats his contention that S.T.'s identification refutes A.H.'s claim that defendant jumped in the car and took it from the victim. (R. 55 at 2-3.) As discussed above, the discrepancies between S.T.'s initial description, given when he was intoxicated and upset, did not require the police to discount A.H.'s statements.

---

[3]Defendant later concedes his Tahoe "resembles" the SUV at the carjacking scene (R. 55 at 4), but the match between the two vehicles is stronger than that. (See R. 40 at 16-17.)

In sum, I agree with the magistrate judge that the police had probable cause to arrest defendant. Accordingly, the search of his person incident to that arrest was also lawful.

**b.    Search of the Tahoe**

Defendant primarily argues that the evidence seized from the Tahoe must be suppressed as fruit of the unlawful arrest. (R. 48 at 13; R. 55 at 4.) However, he also briefly challenges the magistrate judge's conclusion that the search of the Tahoe was permissible as either a search incident to arrest or under the automobile exception. (R. 48 at 14.)

Officers may search a vehicle incident to arrest when it is reasonable to believe the car contains evidence of the offense of arrest. United States v. Davis, 119 F.4th 500, 506 (7th Cir. 2024). Under the related automobile exception, police may search a vehicle without a warrant if the search is supported by probable cause, although such a search need not be tied to any arrest. Id. Probable cause to search a vehicle exists when, based on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found therein. Id.

As the magistrate judge noted, the officers had probable cause to believe the Tahoe contained evidence, e.g., the gun used in the carjacking, the Tahoe's title and other identifiers for its owner/operator, and S.T.'s stolen property. (R. 45 at 23.) Defendant argues the police lacked sufficient information that his Tahoe was the same SUV used in the carjacking (R. 48 at 14), but given the comparison photos (coupled with A.H.'s statement) that argument lacks merit. Defendant further argues the police had no reason to believe the person who stole the Mazda ever returned to the Tahoe (R. 48 at 14), but this ignores the surveillance footage suggesting at least two people were involved in the carjacking, A.H.'s statement that defendant sold the Mazda to him after he stole it, and the police's observation of defendant later operating

12

the Tahoe. Finally, defendant argues that there was no reason to believe any evidence of the crime would still be in the Tahoe two weeks later (R. 48 at 14), but the police had by that point recovered the stolen Mazda, and it did not contain the gun or S.T.'s personal property. As the Seventh Circuit has noted, unlike, say, a small amount of drugs, a suspect is more likely to hold onto a firearm, making passage of time less significant. E.g., United States v. Hicks, 650 F.3d 1058, 1068 (7th Cir. 2011). In any event, as the government notes, the arrest here occurred less than two weeks after the carjacking.[4] (R. 53 at 7.)

For these reasons and those stated by the magistrate judge, the search of the Tahoe was also permissible.

### 2. Search Warrants

#### a. Probable Cause

Probable cause for the issuance of a search warrant exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Hueston, 90 F.4th 897, 902 (7th Cir. 2024). Defendant argues that the warrants in his case issued based on conclusory statements, without facts connecting his phones or phone records to the crimes under investigation. (R. 48 at 15.) But the Seventh Circuit "has consistently held that, for a search warrant, probable cause does not require direct evidence linking a crime to a particular place." United States v. Zamudio, 909 F.3d 172, 175 (7th Cir. 2018) (internal quote marks omitted). "Rather, issuing judges may draw reasonable inferences about where evidence is likely to be found based on the nature of the evidence and the offense." Id. Here, as the

---

[4]In reply, defendant wonders how a belief that the Tahoe contained the robbery weapon could be squared with the government's alternate theory that he drove away in the Tahoe while someone else acted the gunman. (R. 55 at 4.) I don't necessarily see a conflict. The argument also overlooks S.T.'s missing personal property, which wasn't found in the Mazda.

magistrate judge noted:

> In addition to the factual bases for believing that Burks was involved in the carjacking that supported his arrest, the officers found additional evidence of crimes during their search of Burks's Tahoe: a black revolver, fentanyl, cocaine, and a scale. (ECF No. 40, ¶¶ 77-85.) Having reason to believe Burks was involved in the carjacking and dealing drugs, the officers were permitted to follow their training and experience regarding the habits and practices of persons engaged in such crimes, including searching the phones found on Burks's person.

(R. 45 at 24.)

> As to phone records, Burks makes no specific argument as to how the affidavit failed to establish probable cause for the search. Already having probable cause to believe Burks was involved in the carjacking, and having found two cell phones on his person, the officers had probable cause to believe evidence of the carjacking would be found in the phone records, including evidence of who owned the phones and where and when they were used during the period in question. (See ECF No. 20-3.)

(R. 45 at 25.)[5]

The magistrate judge did not, as defendant suggests, find that police may always search a suspect's cell phones. (R. 48 at 16.) Rather, reading the affidavits as a whole, in a common sense, non-technical manner, and giving great deference to the issuing judges' finding of probable cause, he found a substantial basis existed for concluding there was probable cause that evidence of a crime would be found in the cell phones and T-Mobile records. (R. 45 at 26.)

At the very least, the officers could have relied in good faith on the judges' decisions to issue the warrants. The decision to seek a warrant creates a presumption that the officers

---

[5]Similarly, in the objections, defendant develops no specific argument regarding the phone records.

14

acted in good faith, and defendant fails to rebut that presumption.[6] See Hueston, 90 F.4th at 904. As the government notes, these virtually identical affidavits were approved by two different state court judges (R. 53 at 9), in addition to being reviewed by an assistant district attorney. See United States v. Pappas, 592 F.3d 799, 802 (7th Cir. 2010) ("Consulting with the prosecutor prior to applying for a search warrant provides additional evidence of that officer's objective good faith.") (cleaned up).

### b.   Particularity

The Fourth Amendment requires search warrants to particularly describe the places to be searched. United States v. Miles, 86 F.4th 734, 742 (7th Cir. 2023). This particularity requirement protects people against the government's indiscriminate rummaging through their property, and it ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause. Id. As indicated above, however, warrants may be issued even in the absence of direct evidence linking criminal objects to a particular site. Id. As also alluded to above, an issuing judge is entitled to take into account the officer-affiant's experience as to where suspects are likely to store evidence of their criminal activity. Id. Relatedly, warrants are constitutional when they are as specific as the officers' knowledge allows. Id. at 743.

Defendant argues that the search warrants for his phones were overbroad in that they authorized law enforcement to search the entirety of his phones without any meaningful restrictions. (R. 48 at 17.) But the Seventh Circuit has upheld a warrant authorizing the search

---

[6]Defendant does not address good faith in his objections reply, other than to note the exception does not apply if the police misled the issuing judge. (R. 55 at 9.) As discussed below, I reject defendant's Franks argument.

of every file on a cell phone where the police did not know where on the phone the suspect stored evidence of the crimes at issue. United States v. Bishop, 910 F.3d 335, 337-38 (7th Cir. 2018). "It is enough, [the court held], if the warrant cabins the things being looked for by stating what crime is under investigation." Id. at 337. Defendant suggests that the warrants should have included temporal limits or limited the search of communications to relevant individuals (R. 48 at 17), but he fails to explain how that would have been consistent with the crimes under investigation, including drug trafficking. See Bishop, 910 F.3d at 337 ("A warrant may be thought 'too general' only if some more-specific alternative would have done better at protecting privacy while still permitting legitimate investigation."). The warrant for the phone records was limited to a two-month period, but defendant argues it should have been further limited to the relevant time frame and relevant characters. (R. 48 at 18.) However, he does not explain how that would be done and why it would be required by the Constitution. Finally, defendant cites Bishop's dictum "that specificity is a relative matter," id. at 337, but he fails to explain how the instant warrants could have been narrowed consistent with the officers' knowledge and their legitimate investigative goals.[7]

### c. Scope

In executing a search warrant, officers are entitled to search anywhere the items to be

---

[7]In reply, defendant cites United States v. Blake, 868 F.3d 960 (11th Cir. 2017), but that case involved a warrant for Facebook data, which the court contrasted with the search of a hard drive. Id. at 974 ("By contrast, when it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data."). Ultimately, the court declined to "decide whether the Facebook warrants violated the Fourth Amendment because, even if they did, the district court did not err in allowing the government to use evidence gathered as a result of them. The Facebook warrants fall into the 'good-faith exception' to the exclusionary rule established by United States v. Leon[.]"). Id. The same is true here.

16

seized might be discovered, so long as that is within the place authorized to be searched. United States v. Johnson, 47 F.4th 535, 541 (7th Cir. 2022). The objects of the search set the boundaries of the scope. Id. However, an officer may also seize evidence that, although not described in the warrant, is subject to seizure under the plain view doctrine. Id.

Defendant argues that law enforcement exceeded the scope of the warrant by searching his health application data. (R. 48 at 18; R. 55 at 7.) He contends that the warrant affidavit set forth no facts from which the issuing judge could have found probable cause to believe evidence of the crimes under investigation would be stored in his health application. (R. 48 at 18-19.) He concludes that the privacy concerns are heightened because health data is widely regarded as confidential, and there was no specific request in the affidavit to examine such data. (R. 48 at 19.)

The magistrate judge concluded:

The officers did not exceed the scope of the warrant by viewing the iPhone health application data. (See ECF No. 20 at 10.) As the government explains, this data was alongside other data on the phone that, when downloaded, appeared in plain view with the rest of the cell phone data. (ECF No. 28 at 28-29.) It was thus covered by the search warrant authorizing a search of the phone.

(R. 45 at 27.)

As indicated above, the warrant authorized police to search all files on the phone where evidence of crime might be found. It appears the police examined the data extracted from defendant's iPhone, identifying data from defendant's Apple watch, which apparently showed movement around the time of the carjacking. (R. 40 at 22 ¶ 98.) Defendant develops no argument that the police improperly accessed confidential medical information.

### d. Franks

A criminal defendant who alleges that a warrant was materially inaccurate or incomplete

17

may be entitled to a <u>Franks</u> hearing to determine whether facts were deliberately or recklessly omitted from the warrant application. <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978). To obtain a <u>Franks</u> hearing, the defendant must make a "substantial preliminary showing" that the warrant application contained a material falsity or omission that would alter the issuing judge's probable cause determination, and that the affiant included the material falsity or omitted information intentionally or with a reckless disregard for the truth. <u>United States v. Coleman</u>, 138 F.4th 489, 506-07 (7th Cir. 2025). "Because these elements are hard to prove, <u>Franks</u> hearings are rarely required." <u>United States v. Slizewski</u>, 809 F.3d 382, 384 (7th Cir. 2016). As indicated above, the magistrate judge denied defendant's request for a <u>Franks</u> hearing.

Defendant argues that in rejecting his <u>Franks</u> arguments the magistrate judge understated the gravity of the omissions about A.H.'s credibility and overstated the degree to which police corroborated A.H.'s statements. (R. 48 at 19-20.) He further complains that the affidavit omitted the full description of the robber initially given by S.T. (R. 48 at 20.) As discussed above, I disagree with defendant's claims about A.H.'s credibility and the police's efforts to corroborate his statements; I also disagree with his claim that S.T.'s initial statement "exculpates" him from the carjacking.

The Seventh Circuit has held that a <u>Franks</u> hearing is not "required every time some substantial adverse information about an informant's credibility is omitted from a probable cause affidavit." <u>United States v. Clark</u>, 935 F.3d 558, 565 (7th Cir. 2019) (citing <u>United States v. Hancock</u>, 844 F.3d 702, 709 (7th Cir. 2016)). "Our <u>Franks</u> hearing cases show that when police have sufficiently corroborated an informant's tip, the omission of facts pertaining to the informant's credibility may not be material." <u>Id.</u> I agree with the magistrate judge that this is such a case.

18

I also agree with the magistrate judge that defendant failed to make the necessary "substantial preliminary showing" that the affiant intentionally or recklessly misled the warrant-issuing judges. See United States v. Woodfork, 999 F.3d 511, 518 (7th Cir. 2021). Defendant argues that the nature of the omissions is circumstantial evidence that the officer-affiant intentionally or recklessly presented a misleading picture to the issuing judges. (R. 48 at 21; R. 55 at 8.)

> "To secure a Franks hearing, a defendant must put forth 'an offer of proof' that is 'more than conclusory' and gestures toward more than negligent mistakes." United States v. Daniels, 906 F.3d 673, 677 (7th Cir. 2018) (per curiam) (quoting Franks, 438 U.S. at 171). "What is needed is 'direct evidence of the affiant's state of mind' or else 'circumstantial evidence' of 'a subjective intent to deceive.'" Id. (quoting Glover, 755 F.3d at 820). To make the necessary preliminary showing, "the evidence must show that the officer submitting the complaint perjured himself or acted recklessly because he seriously doubted or had obvious reason to doubt the truth of the allegations." United States v. Johnson, 580 F.3d 666, 670 (7th Cir. 2009) (citing United States v. Jones, 208 F.3d 603, 607 (7th Cir. 2000); United States v. Williams, 737 F.2d 594, 602 (7th Cir. 1984)).

Woodfork, 999 F.3d at 518.

As the magistrate judge noted, while the officer-affiant omitted details pertaining to A.H.'s criminal history, arrest, and inconsistent statements, he also omitted information that would have bolstered A.H.'s credibility (e.g., his knowledge of the hidden compartment in defendant's Tahoe). (R. 45 at 30.) Defendant disputes the magistrate judge's theory that the affiant omitted this information for the purpose of brevity (R. 48 at 21), but at most the officer was negligent in failing to include more information about A.H.'s credibility. Negligence does not justify a Franks hearing. Woodfork, 999 F.3d at 518.

Finally, defendant has no good response to the magistrate judge's alternate conclusion that the omissions relate only to the carjacking, not the other crimes of drug trafficking and firearm possession. (R. 45 at 31.) Defendant cites Clark, 935 F.3d at 567, for the proposition

19

that an affiant's complete omission of damaging information may permit a reviewing court to dismiss all of the affiant's assertions in the affidavit. (R. 48 at 22.) But this is not a case where the affiant omitted all adverse information. For instance, he included that A.H. was arrested driving the stolen Mazda. (R. 45 at 30.) Moreover, defendant develops no argument that the omissions about A.H.'s credibility regarding the carjacking materially undermined the affiant's statements about his training and experience supporting a search for evidence of the alleged drug and gun crimes.

In sum, I agree with the magistrate judge's assessment of defendant's motion to suppress evidence obtained pursuant to the search warrants. That motion will be denied.

## B. Motion to Dismiss

Under N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 24 (2022):

When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

As the magistrate judge noted, the judges of this district court have unanimously concluded that prohibiting felons from possessing firearms is consistent with history and tradition. (R. 45 at 36.) These cases fully discuss the relevant traditions and identify appropriate historical analogs. See, e.g., United States v. Johnson, 701 F. Supp. 3d 785, 791-94 (E.D. Wis. 2023). Defendant notes that the Seventh Circuit has the issue under review. (R. 48 at 29 n.24.) Until the Seventh Circuit or Supreme Court say otherwise, I will stick with the consensus.

Defendant also brings an as-applied challenge (R. 48 at 29), but as I have previously concluded, "the historical evidence supports categorical limitations." Johnson, 701 F. Supp. 3d

20

at 794. Contrary to defendant's suggestions (R. 48 at 30; R. 55 at 10), nothing in Bruen requires the government to demonstrate a tradition of disarming people "like Burks" or "in Burks's particular circumstances." See United States v. Wandick, No. 24-CR-20023, 2025 U.S. Dist. LEXIS 123475, at *32-34 (C.D. Ill. June 30, 2025).[8]

In United States v. Gay, 98 F.4th 843, 846 (7th Cir. 2024), the court assumed for the sake of argument that there is some room for as-applied challenges, but that assumption does not assist defendant. As the magistrate judge noted, defendant has a substantial prior record and completed supervision on his most recent conviction less than five months before his alleged conduct in this case. (R. 45 at 37.) Further, the indictment in this case charges defendant with an armed carjacking and with possessing that same firearm in connection with drug trafficking. The "Constitution does not give anyone the right to be armed while committing a felony[.]" United States v. Jackson, 555 F.3d 635, 636 (7th Cir. 2009). Based on the allegations, defendant "is not a 'law-abiding, responsible' person who has a constitutional right to possess firearms." Gay, 98 F.4th at 847.[9]

––––––––––––––––––––––––

[8]In Range v. AG United States, 124 F.4th 218, 232 (3rd Cir. 2024) (en banc), the court granted declaratory relief to a man convicted of a non-violent felony decades earlier, finding 18 U.S.C. § 922(g)(1) unconstitutional as applied to him. The majority concluded: "Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights." Id. As I noted in Johnson, in requiring the government to identify historical regulations targeting people "like Range," the court demanded the impossible. 701 F. Supp. 3d at 793. Of course, no colonial or reconstruction era legislature passed laws specifically disarming persons with all of Range's (or defendant's) individual characteristics. The Seventh Circuit has also distinguished Range on its facts. United States v. Gay, 98 F.4th 843, 847 (7th Cir. 2024) ("Instead of contesting §922(g)(1) through a declaratory-judgment action, as Range did, Gay violated the law in secret and tried to avoid detection."). The same is true of defendant.

[9]In Gay, the court in addressing the as-applied challenge considered the defendant's prior record and the conduct at issue in the instant prosecution. As I discussed in Johnson, it

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 46) is adopted, and defendant's motions to suppress (R. 20, 21) and motion to dismiss (R. 19) are denied. I will defer ruling on the objection to the severance order at this time.

**IT IS FURTHER ORDERED** that this matter is scheduled for telephonic status on **Thursday, November 13, 2025, at 10:30 a.m.**

Dated at Milwaukee, Wisconsin, this 31st day of October, 2025.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge

---

is unclear what sort of evidence a court might consider in addressing an as-applied challenge and how it should do so in the context of a pre-trial motion to dismiss, which is ordinarily decided based on the four corners of the indictment. 701 F. Supp. 3d at 794. "In the absence of historical evidence requiring such an approach, it seems best for criminal courts to stay out of the business of deciding which felons are properly charged under § 922(g)(1)." Id.